United States District Court
District of New Jersey

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. MADELINE COX ARLEO |
| v. | : | **CRIMINAL COMPLAINT** |
| CHARLES CHAPPLE, a/k/a "Gregory Stevens" | : | Magistrate No. 08- |

I, Sean Lawler, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about July 31, 2008, in the District of New Jersey and elsewhere, defendant did:

> knowingly and intentionally attempt to distribute and to possess with intent to distribute 5 kilograms or more of cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a) and (b)(1)(A)

In violation of Title 21, United States Code, Section 846.

I further state that I am a Special Agent with the Drug Enforcement Administration, and that this complaint is based on the following facts:

SEE ATTACHMENT A

Sean Lawler
Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

August 1, 2008                    at    Newark, New Jersey
Date                                          City and State

Honorable Madeline Cox Arleo
United States Magistrate Judge          Signature of Judicial Officer

ATTACHMENT A

I, Sean Lawler, am a Special Agent with the Drug Enforcement Administration. Based upon my investigation and my discussions with other individuals involved in this investigation, I have knowledge of the following facts:

1. In June 2008, an undercover agent (hereinafter referred to as the "UC") received several telephone calls from Charles Chapple, a/k/a "Gregory Stevens" ("CHAPPLE"). During those calls, CHAPPLE stated, in substance and in part, that he was a narcotics trafficker who was interested in obtaining kilograms of cocaine for redistribution. The UC told CHAPPLE that the UC could supply CHAPPLE with 180 kilograms of cocaine and CHAPPLE agreed to pay the UC an initial installment payment of $450,000. CHAPPLE arranged a meeting with the UC to exchange approximately 180 kilograms of cocaine for approximately $450,000 in Pittsburgh, Pennsylvania.

2. On or about June 19, 2008, the UC and CHAPPLE met at the Pittsburgh International Airport to discuss the delivery of the cocaine. At that meeting, CHAPPLE stated that he had only $250,000 and therefore no exchange took place. During the calls described above, CHAPPLE was using two cellular telephone assigned the numbers (646) 648-5470 and (323) 328-4176.

3. Within the past week, CHAPPLE called the UC several times on a cellular telephone assigned the number (412) 812-6261 to arrange a meeting in New Jersey to exchange 200 kilograms of cocaine for an installment of approximately $550,000. During the ensuing conversations, CHAPPLE stated, in substance and in part, that he would meet with the UC at a hotel located in Hasbrouck Heights, New Jersey to consummate the cocaine transaction.

4. At approximately 4:00 p.m. on July 31, 2008, UC met with CHAPPLE at a hotel parking lot in Hasbrouck Heights, New Jersey and engaged in a conversation, which was recorded by law enforcement agents with the consent of UC. While in the parking lot, UC exited his vehicle and walked to a vehicle driven by CHAPPLE. Inside CHAPPLE's vehicle, UC observed CHAPPLE and another individual. CHAPPLE exited his vehicle and walked with the UC to the rear of CHAPPLE's vehicle where CHAPPLE lifted the hatchback, in which two duffle bags were located. CHAPPLE then opened the duffle bags and showed the contents of the bags to the UC. The UC observed U.S. currency in each of the bags. The UC stated, in substance and in part, that he would leave the parking lot to obtain the 200 kilograms of cocaine to exchange with CHAPPLE for an instalment of $250,000. The UC returned to his vehicle and exited the parking lot. CHAPPLE then entered his vehicle and began to exit the parking lot a few minutes later. This meeting between defendant CHAPPLE and UC was observed by law enforcement agents conducting surveillance.

5. Before CHAPPLE exited the parking lot, law enforcement agents moved in to make an arrest. To avoid apprehension, CHAPPLE put his vehicle in reverse at high speed and hit a law enforcement vehicle. Immediately thereafter, law enforcement agents arrested CHAPPLE.

6. Following CHAPPLE's arrest, law enforcement agents conducted a search of the vehicle that defendant CHAPPLE was driving while located in the parking lot. During this search, law enforcement agents discovered a cellular telephone assigned the number (412) 812-6261 and the two large duffel bags with a large amount of U.S. currency.